UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH RAUCH,

    Plaintiff,

v.                                                          Case No. 1:18-cv-408
                                                          Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of November 29, 2011. PageID.204. Plaintiff identified her disabling conditions as: dis-associative identity disorder; bipolar 2; major depression with recurrent psychosis; anxiety; post traumatic stress disorder (PTSD); PTSD recurrent with psychosis; and moderate chronic pain. PageID.217. Prior to applying for DIB, plaintiff completed the 12th grade, earned a certificate for medical assistant, and attended classes for daycare to become certified in AED and CPR. PageID.218. Plaintiff had past employment as a cashier, a childcare provider, and a bank teller. PageID.49, 219. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 20, 2017. PageID.42-51. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 29, 2011 and met the insured status requirements of the Social Security Act through June 30, 2015. PageID.117. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of spine disorders, affective disorders (bipolar disorder) and

anxiety disorders (generalized anxiety disorder). PageID.44. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.44-45.

> The ALJ decided at the fourth step that:
>
> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except also limited to occasional climbing of stairs and ramps; no climbing ropes, ladders or scaffolds; also limited to occasional balancing, crouching, and crawling; avoiding concentrated exposure to unprotected heights, including machinery; also limited to simple, routine repetitive tasks; and tasks, which involve no interaction with the public and only occasional interaction with coworkers and supervision.

PageID.46. The ALJ also found that through the date last insured, plaintiff was unable to perform her past relevant work. PageID.49.

At the fifth step, the ALJ determined that, through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.50-51. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the national economy such as nut and bolt assembler (400,000 jobs) and garment sorter (200,000 jobs). PageID.50. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from November 29, 2011 (the alleged onset date) through June 30, 2015 (the date last insured). PageID.50-51.

## III.    DISCUSSION

Plaintiff set forth four errors on appeal:

> **A.    The ALJ did not take into account concentration, persistence, and pace (CPP) limitations he found.**

Plaintiff contends that the decision is internally inconsistent because the ALJ found that plaintiff had moderate restrictions in CPP at step three, but omitted the restriction from the residual functional capacity (RFC) finding at step four. The Court disagrees. The CPP finding was made at step three of the sequential evaluation process when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of listed impairments 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders). PageID.45. The reference to CPP in "paragraph B" is written in the disjunctive, *i.e.*, to meet the listing by showing CPP, the claimant must have an extreme or marked limitation in the ability to "concentrate, persist *or* maintain pace." *See* Listings 12.04.B.3. and 12.06B.3. "Because three different functions [in paragraph 'B'] are listed in the disjunctive, however, a check in the moderate box does not indicate whether the limitation applies to one, two, or all three functions. . . . the mental residual functional capacity assessment requires a more detailed assessment than the preliminary assessment used at steps 2 and 3 to determine whether the impairment is severe and meets a listing." *Kraus v. Colvin*, No. 13-C-0578, 2014 WL 1689717 at *15 (E.D. Wis. April 29, 2014).

If an ALJ finds that a claimant has failed to meet the requirements of a listed impairment, then the ALJ determines the claimant's RFC in a separate determination made at step four. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014). As the Court observed in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> [T]he ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential

5

evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10.

Here, the ALJ incorporated the relevant portions of the "paragraph B" criteria into the RFC assessment:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

PageID.45-46.

Finally, plaintiff's reliance on *Keeton v. Commissioner*, 583 Fed. Appx. 515, 533-34 (6th Cir. 2014) for the proposition that an RFC limiting a claimant to "simple, repetitive, low stress, not fast paced, no production quota" work did not incorporate a moderate CCP limitation is misplaced. *See Palmer v. Commissioner of Social Security*, No. 1:16-cv-660, 2017 WL 2129689 at *4 (W.D. Mich. May 17, 2017) (limiting *Keeton* to situations where "it was 'not clear' whether the ALJ had incorporated the moderate limitations that were earlier found into the hypothetical and RFC determination"). Here, the ALJ stated that the RFC includes the limitations found in the "paragraph B" analysis. PageID.45-46. In this regard, the RFC included the non-exertional limitations that plaintiff is "limited to simple, routine repetitive tasks" and "tasks which involve no interaction with the public and only occasional interaction with coworkers and supervision [sic]." PageID.46. For these reasons, the ALJ's decision is not internally inconsistent. Accordingly, plaintiff's claim of error will be denied.

        **B.    The ALJ gave inadequate reasons to reject the nontreators [sic].**

### 1. "Records Reviewer Roschmann"

Plaintiff contends that that ALJ's RFC is not supported by substantial evidence because it assumes that plaintiff is unlimited in stooping. Plaintiff's Brief (ECF No. 12, PageID.578). This contradicts Dr. Roschmann's conclusion in March 2015 that plaintiff was limited to occasional stooping. *Id*. Plaintiff contends that the ALJ's rejection of Dr. Roschmann's 2015 opinion is "reversibly vague." *Id*. The ALJ addressed Dr. Roschmann's opinions as follows:

> On July 8, 2014, the State agency medical consultant, Robert Roschmann M.D., concluded the claimant was restricted to light work exertionally except also limited to occasional climbing of ramps and stairs; no climbing ropes, ladders or scaffolds or balancing; and frequent stooping, kneeling, crouching and crawling; avoiding concentrated exposure to unprotected heights supported by objective testing and office visit physical examination findings (Exhibit 1A, pgs. 6-9). The undersigned has adopted the opinion of the consultant with the exception of some postural restrictions such as never balancing and frequent stooping, kneeling, crouching and crawling since these more restrictive medical functional limitations are not well supported by the hearing level record. Therefore, the undersigned assigns significant weight to the opinion of Dr. Roschmann and no weight to those portions of the opinion, the undersigned has rejected. . . .
>
> On March 19, 2015, the State agency medical consultant Dr. Roschmann, concluded the claimant was restricted to light work exertionally except also limited to frequent climbing of ramps and stairs, balancing, kneeling, crouching, and crawling; no climbing ropes, ladders or scaffolds; occasional stooping; and avoiding concentrated exposure to unprotected heights supported by objective testing and office visit physical examination findings (Exhibit 3A, pgs. 9-11). As noted above, the undersigned has adopted the opinion of the consultant with the exception of some postural restrictions. Similarly, the undersigned adopts the opinion of Dr. Roschmann to the extent it mirrors the stated residual functional capacity, which is consistent with the record at the hearing level record. Therefore, the undersigned assigns significant weight to the opinion of Dr. Roschmann and no weight to those portions of the opinion, the undersigned has rejected.

PageID.48-49.

The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling weight, the agency will consider the factors set forth in § 404.1527(c)(1)-(6) in deciding the weight

7

given to any medical opinion. *See* 20 C.F.R. § 404.1527(c). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

Here, the ALJ did not clearly articulate which portions of the doctor's 2015 opinion he accepted,[1] and gave no specific reasons for rejecting "some" postural limitations.[2] This being said, the only objection raised by plaintiff is with respect to "stooping." In both 2014 and 2015, Dr. Roschmann limited plaintiff to stooping "occasionally", but the ALJ's RFC did not limit plaintiff with respect to stooping. PageID.46, 91, 105. However, this was harmless error. At the hearing, the hypothetical question posed to the vocational expert (VE) included "occasional balancing, stooping, crouching, and crawling . . ." as well as the other limitations set forth in the RFC. PageID.80-81. Even with "occasional stooping", the VE testified that plaintiff could perform the 600,000 jobs as a "nuts and bolt assembler" and a "garment sorter." PageID.81. Accordingly, plaintiff's claim of error should be denied.

---

[1] As discussed, the ALJ stated that he "adopted the opinion of the consultant with the exception of some postural restrictions" referenced in the 2014 opinion, that he "adopts the opinion of Dr. Roschmann to the extent it mirrors the stated residual functional capacity, which is consistent with the record at the hearing level record", and that he "assigns significant weight to the opinion of Dr. Roschmann and no weight to those portions of the opinion, the undersigned has rejected." PageID.49.

[2] In this regard, the ALJ rejected "some postural restrictions such as never balancing and frequent stooping, kneeling, crouching and crawling" other than to state that "these more restrictive medical functional limitations are not well supported by the hearing level record." PageID.48.

8

### 2. LLP Reilly

Plaintiff contends that the ALJ improperly rejected LLP Reilly's opinion. The ALJ addressed that opinion as follows:

> On April 9, 2015, Neil J. Reilly, M.A., limited licensed psychologist, conducted a consultative examination of the claimant in the company of her husband. She described her symptoms of dissociative identity disorder, anxiety and depression over the past 10 years, history of suicidal thoughts and cutting herself, mood swings, disorientation, and sometimes crying in bed all day. Her husband described her mood swings and said you do not know if you are going to get "Jekyll or Hyde." Psychologist Reilly concluded without better management of her symptoms, it does not seem that the claimant is able to function competitively in a full time work situation without her symptoms interfering to a significant degree (Exhibit 5F). This opinion is based upon a onetime examination and more based upon the subjective complaints rather than based upon a consideration of the entire record. Therefore, the undersigned assigns limited weight to this consultative examiner's opinion to the extent it supports any more limitations than indicated above.

PageID.48.

Plaintiff contends that the ALJ improperly rejected LLP Reilly's opinion because it was based upon a one-time examination which relied on plaintiff's self-reported symptoms. Plaintiff's Brief (ECF No. 12, PageID.578-579). The Court agrees that the ALJ erred in summarily rejecting LLP Reilly's opinions. As this Court stated in *Booher v. Commissioner*, No. 2014 WL 5094202 (W.D. Mich. Sept. 25, 2014):

> ALJ Ritter could not discount the examiner's opinions of plaintiff's psychological condition solely because the examiners relied on plaintiff's subjective complaints. With respect to plaintiff's subjective complaints regarding his mental condition, the Sixth Circuit has stated that "[m]ental disorders are not uncommonly diagnosed after one interview." *Blankenship* [*v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)]. As the Sixth Circuit explained:
>
>> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind

> cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness . . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.
>
> *Blankenship*, 874 F.2d at 1121, quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987).

*Booher*, 2014 WL 5094202 at *10. In short, plaintiff's claim of error has merit. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405g. On remand, the Commissioner should re-evaluate LLP Reilly's opinions.

### C. The ALJ mishandled plaintiff's complaints [i.e., her reported symptoms and limitations].

Plaintiff contends that the ALJ failed to state which symptoms were consistent or inconsistent with the medical record. As an initial matter, the ALJ stated that

> [T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

PageID.46. Here, the ALJ addressed the medical evidence with respect to her severe impairments. However, defendant's counsel admits that "Although [the ALJ] acknowledged that he was required to 'evaluate the intensity, persistence, and limiting effect of [Plaintiff's] symptoms to determine the extent to which they limit [her] functional limitations,' he did not actually *find* that her symptom allegations were, or were not, substantiated by the objective medical evidence." Defendant's Brief (ECF No. 12, PageID.601) (emphasis in original). While defendant concludes

that the ALJ's failure to making findings with respect to her symptoms was a mere articulation error, the Court disagrees.

The relevant regulation, 20 C.F.R. § 404.1529 provides in part:

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. § 404.1529(a). Here, the ALJ made no determinations with respect to whether plaintiff's symptoms were, or were not, consistent with the medical evidence. In the absence of these determinations, there is no basis upon which the Court can review the ALJ's decision. An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Accordingly, this matter should be reversed and remanded pursuant to 42 U.S.C. § 405g. On remand, the Commissioner should re-evaluate plaintiff's symptoms and determine the extent to which plaintiff's alleged functional limitations can reasonably be accepted as consistent with the evidence.

### D.  The ALJ failed to address regional jobs.[3]

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays

---

[3] This Court rejected the same argument made by plaintiff's counsel in *Chicky v. Commissioner of Social Security*, No. 1:17-cv-819, 2018 WL 3720065 at *11 (R&R), adopted in 2018 WL 3708053 (Order) (W.D. Mich. Aug. 2, 2018).

the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004). As discussed, the VE concluded that a person with plaintiff's limitations could perform 600,000 jobs in the national economy. PageID.50-51. Plaintiff did not dispute the VE's testimony at the hearing. *See* PageID.82. Now, plaintiff seeks a reversal and remand due to the insufficiency of the VE's testimony. This Court has concluded that such a failure to contest the VE's testimony results in a waiver of that claim in a subsequent appeal:

> "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:11–cv–1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012) (citing *Hammond v. Chater*, No. 96–3755, 1997 WL 338719, at *3 (6th Cir. June 18, 1997) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal)); *see Lyon v. Comm'r of Soc. Sec.*, No. 1:11-cv-1104, 2013 WL 1149967, at *4 (W.D. Mich. March 19, 2013) (the plaintiff's challenge to the VE's testimony was waived because she failed to object to the testimony at the administrative hearing).

*Spohn v. Commissioner of Social Security*, No. 1:16-cv-952, 2017 WL 2838235 at *5 (W.D. Mich. July 3, 2017).

Even if plaintiff had raised that issue at the hearing, the ALJ did not err by relying on the VE's testimony that plaintiff could perform 600,000 jobs nationally. "The Commissioner is not required to show that job opportunities exist within the local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). The applicable statute provides that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The "national" numbers of jobs identified by the VE are presumed to constitute work existing in several regions in the country. *See Gutierrez v. Commissioner of Social Security*, 740 F.3d 519, 529 (9th Cir. 2014) (nationwide figures are assessed "in the context of 'several regions of the country'").

In addition, the regulations provide in pertinent part that:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. § 404.1566(b). Plaintiff has not demonstrated that the identified jobs, i.e., nut and bolt assembler and garment sorter are "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [he lives]." *See id*. *See, e.g, Gutierrez*, 740 F.3d at 529 ("A finding of 25,000 jobs likely does not fall into the category of 'isolated jobs' existing in 'very limited numbers.'"). The 600,000 total jobs identified by the VE (PageID.50-51) constitute a significant number of jobs for purposes of a disability claim. Accordingly, plaintiff's claim of error should be denied.

## IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405g. On remand, the Commissioner should (1) re-evaluate the opinion of LLP Reilly, and (2) re-evaluate

plaintiff's symptoms and determine the extent to which plaintiff's alleged functional limitations can reasonably be accepted as consistent with the evidence.

Dated:  June 20, 2019                                     /s/ Ray Kent
                                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).